Willis *v.* Wozencraft.

Joaquin Carillo to Neville & Hendley was not executed in any particular as it now appears on its face, they are to presume that it is all false ; 2d, that if the jury believe from the evidence that the plaintiff has failed to prove any of the signatures to said deed to be genuine, the jury should say that the said deed is not genuine." We see no error in refusing to give the instructions as thus asked for. It is also urged that the Court erred in giving the following instruction asked for by the plaintiff : " If there is a reasonable theory, consistent with the evidence, by which the jury can find in favor of the genuineness of the deed, and consistent with the honesty and truthfulness of all the witnesses in the case, it is the duty of the jury to adopt that theory in preference to one by which perjury or forgery may be involved on the part of a portion of the witnesses." We see no error in giving this instruction.

The last assignment of error is that the defendant has newly-discovered evidence, set forth in the affidavits of R. H. Sinton, B. R. Nesbitt, J. R. Fitch, Chas. H. Horton, and J. M. Neville, which he desires to introduce. This testimony all relates to the genuineness of the signature of Carillo to the deed to Hendley & Neville, and is therefore clearly cumulative, and it affords no just ground for a new trial of the cause.

It may be doubtful whether this action lies under the circumstances of this case ; but as no question of that kind was raised by the counsel for the appellant, either in the Court below or in this Court, we merely refer to it that it may not be treated as a precedent in any future case.

The judgment is affirmed.

## WILLIS *v.* WOZENCRAFT.

A MERE equitable title to land, if of such a character as in equity entitles the holder to possession, is a sufficient defense, under our system of practice, to an action for the possession brought by the holder of the legal title.

Whenever a right claimed under the rules of the common law is denied, governed, or controlled by the principles administered by Courts of Equity the latter will prevail over the former.

| 22 | 607 |
| 79 | 436 |
| 79 | 438 |
| 22 | 607 |
| 88 | 395 |
| 22 | 607 |
| 91 | 351 |
| 91 | 381 |
| 22 | 607 |
| 118 | 637 |

Willis *v.* Wozencraft.

The plaintiff, to recover in ejectment, must show both a legal and equitable title, or right of possession. From proof of the legal title a right of possession will be presumed, but the presumption may be rebutted by proof of an equitable title in another of a character to carry the right of possession.

Where one contracting for the purchase of land received the possession with a bond for a deed upon payment of the purchase money, and containing a stipulation that the purchaser was in possession and entitled to the rents and profits : *held*, in an action of ejectment against the vendee remaining in possession by a subsequent purchaser from the vendor with notice, that the defendant should prevail without reference to the payment or non-payment of the purchase money.

The doctrine of *Gaven* v. *Hagen* (15 Cal. 208), that a vendee of real estate under a contract of purchase, which is silent as to the possession, has no right to the possession until a performance of the conditions prescribed by the contract to entitle him to a deed, commented upon and questioned.

APPEAL from the First Judicial District.

The following is the instrument executed March 20th, 1858, by Deputy to Wozencraft, defendant:

" Know all men by these presents, that I, William C. Deputy, of the County of San Bernardino and State of California, party of the first part, am held and firmly bound unto Oliver M. Wozencraft, of the county and State aforesaid, party of the second part, in the sum of one thousand and eight hundred and seventy-five dollars to be paid to said party of the second part, his heirs or assigns, to which payment well and truly to be made, I do hereby bind myself, my heirs, executors, and administrators, and each of them, firmly by these presents.   The condition of this obligation is such, that whereas the said party of the second part having this day contracted with the party of the first part to purchase of him an undivided half of all that piece or parcel of land lying and being situate in the City and County of San Bernardino and State of California, and known on the official map of said city, recorded in the office of the Recorder of said county, as lots one (1), two (2), three (3), four (4), seven (7), and eight (8), in block eighteen, and is this day in peaceable possession of said premises in common with said party of the first part, with the full right to an undivided half of all the rents and profits of said premises from and after this date, and has for the purchase thereof executed and delivered to the party of the first part his certain promissory note, bearing even

date herewith, for the full sum of one thousand, eight hundred and seventy-five dollars as the price of said land, the said note being due and payable as follows, to wit: twelve months after date. Now on the payment of the said note, principal and interest, and one-half of all the taxes assessed on said premises from and after this present date by the said party of the second part, his heirs or assigns, to the said party of the first part, his heirs, executors, administrators, or assigns, if the said party of the first part shall and does make, execute, and acknowledge or cause to be a good and sufficient deed, conveying and confirming unto the party of the second part, his heirs and assigns, an absolute and indefeasible estate of inheritance in fee simple, clear of all incumbrances, with general warranty, of, in, and to the said one undivided half of said lots one (1), two (2), three (3), four (4), seven (7), and eight (8) of land heretofore described with the appurtenances, then the above obligation to be void, or otherwise it shall be and remain of full force and virtue.

" In witness whereof, I have hereunto set my hand and seal this twentieth day of March, in the year one thousand eight hundred and fifty-eight.                               W. C. DEPUTY."

This instrument was duly acknowledged, and on the third day of May, 1858, recorded in the office of the County Recorder.

The Court, by whom the cause was tried without a jury, found as facts, among others, that Deputy was at the time of the execution of the above instrument the owner in fee of the premises; that he subseqtiently conveyed to Shackleford and he to plaintiff; that about the middle of September, 1858, the plaintiff entered into and occupied certain rooms in one of the buildings upon the premises, and " continued in possession of the same until February, 1859 ;" that defendant " was in possession on the twentieth day of March, 1858, and has been in possession thereof since said date, is now in possession thereof holding adversely to the plaintiff, and derives true title to an undivided half of the premises."

All other material facts are stated in the opinion.   Plaintiff had judgment in the Court below and defendant appeals.

*S. Heydenfeldt*, for Appellant.

The bond from Deputy to defendant was more than a mere agreement to convey, it was an admission or acknowledgment of the right of possession, and its operation was to convey the right of possession. It is true that the right to a conveyance was dependent upon the payment of the purchase money, but the right of possession was not, that was independent and could only be defeated by enforcing the equitable lien for the purchase money, and having a judicial sale of the premises. The parties have made their contract. Legally, one of the conditions which induced defendant to enter into the agreement was, the unconditional conveyance of the right of possession; this right could not be forfeited by the non-payment of the purchase money, because there was no such stipulation. The agreement being recorded, was notice not only of the conditional undertaking to convey, but also of the unconditional right of possession which it particularly recites. Besides, the vendor has not complained of the non-payment of the purchase money, and indeed his sale to the plaintiff took place six months before the purchase money from the defendant was due. The defendant, therefore, has under his contract the legal right of possession, and cannot be ejected. The plaintiff may have the legal title, but could only take it subject to defendant's right of possession to one-half; and as the plaintiff sued for the whole, and shows only a right to recover an undivided half, her action must fail, and the defendant is entitled to judgment, at any rate she can only be entitled to judgment for one-half.

*Stanly & Hays*, for Respondent.

I. The agreement between Deputy and defendant was clearly inadmissible, it being foreign to the issue raised by the answer. The first rule governing the production of evidence is, " that the evidence offered must correspond with the allegations, and be confined to the point in issue." (1 Greenl. Ev. Sec. 51; *Cowan* v. *Price*, 1 Bibb, 175; *Morehead* v. *Ratler*, Id. 317; 2 Id. 4, 7.)

II. Conceding, for the purposes of the argument, that the bond was admissible, defendant did not show, nor even attempt to show, that he had complied or offered to comply with the condition pre-

cedent which he was to perform in order to entitle him to a conveyance, or to enable him to obtain any benefit from the agreement.

The instrument by its very terms makes " the payment of the note, principal and interest, and one-half of all the taxes assessed on said premises," a positive condition to be performed before Wozencraft was entitled to a conveyance; and the rule is well settled that a party seeking to avail himself of a contract containing such a condition is entitled to no relief " unless he has shown himself ready, desirous, prompt, and eager " to perform the condition.

It is said that to enable Mrs. Willis to succeed in this action she must have been the owner of the note, and must have demanded payment and been refused. We respectfully submit, that the rule of law is directly the converse of that stated, and this Court has so expressly decided.

In *Knowles* v. *Shreve* (17 Cal. 275), where the bond was almost identical with the one under consideration, this Court held, that it was necessary to prove a demand by the obligees upon the obligor, to make the deed, and say: " the weight of authority is, that a demand must be made." And in *Fuller* v. *Hubbard & Williams*, (6 Cowen, 13) it was decided that where one agrees to convey land on the payment of money, the vendee must not only tender or pay the money, but he must demand a conveyance.

III.   While it is true that the vendee is treated in equity as the equitable owner of the land, but this is only for some purposes (such as devise, descent, specific performance, etc.), but not for any purpose relating to any question fairly involved in this case. Equity does not regard him as entitled or as having any right to the possession, nor would equity tolerate him in possession for a moment, unless it were with the assent of the vendor. A simple contract to convey at some future time, silent about possession, gives the vendee no right whatever to enter into the possession or intermeddle with the land in any way. (*Suffern* v. *Townsend*, 9 John. 35; *Spencer* v. *Tobey*, 22 Barb. 260; *Cooper* v. *Stower*, 9 John. 331; *Kellogg* v. *Kellogg*, 6 Barb. S. C. 116; *Talbot* v. *Chamberlain*, 3 Paige's Ch. 219.)

It is true, that the contract in the case at bar does give the right of possession to the vendee, but that right only extends and was

only intended to extend until the purchase money became due, when if not paid, the possession reverted to the vendor. This is the fair interpretation of the contract, and the only one the law can put on it. (See *Wright* v. *Moore*, 21 Wend. 230; *Mitchell* v. *De Roche*, 1 Yates, 12.)

That an action for rents and profits or use and occupation will not lie against a vendee is undisputed, as the relation of landlord and tenant can only exist by express or implied agreement. The vendee entering with the consent of the vendor, at most, only estab- lishes a quasi-tenancy at will, and the moment he neglects to com- ply with his contract he can be treated as a trespasser. (See *Smith* v. *Stewart*, 6 John. 46, where the doctrine is thoroughly examined; all the New York cases on this point will be found col- lected in *Jackson* v. *Miller*, 7 Cow. 747.)

At common law a tenant at will was not entitled to notice to quit. *Arguello* v. *Edinger* (10 Cal. 159) simply decides that the taking possession by a vendee, under a parol agreement to purchase, is a sufficient part performance to take the contract out of the operation of the Statute of Frauds. The case of *Wright* v. *Moore* (21 Wend. 230) is in point, and settles the law applicable to this case to be as claimed by respondent.

It has been admitted all through this case, that the right to a conveyance depended upon the payment of the purchase money. How can it reasonably be said, that after the time of payment had elapsed, and no payment been made, that the appellant could right- fully continue in possession? Possession is the only value that title gives. According to the position assumed the defendant was properly in possession after non-payment with a right to continue such possession. What then becomes of plaintiff's title? Is it to be a mere barren title producing no fruits? Giving the right of possession to the defendant would be virtually divesting the plaintiff of her title; she would retain the shadow, while the defendant enjoyed the substance. He who seeks equity must do equity, is a familiar maxim; and the appellant not having offered to pay the note given for the purchase money, is not entitled to the equitable interposition of the Court. While it is true that equity, under certain circumstances, treats things as done where they are only

agreed to be done, yet it is equally true "that nothing is looked upon in equity as done but what ought to be done," and the appellant not having complied with his agreement cannot ask, nor ought the Court to consider the conveyance as made.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of several lots in the City of San Bernardino, the plaintiff in her complaint claiming to be the owner of the whole interest in them. The defendant in his answer sets forth that on the twentieth day of March, 1858, one Deputy was the owner of the premises; that on that day, Deputy sold and conveyed the undivided half of the premises, by an agreement duly executed, acknowledged, and recorded, to the defendant, and under it he entered and ever since has held the lawful possession. The case was tried by the Court, who found for the plaintiff, and rendered judgment accordingly for the restitution of the possession of the entire estate to the plaintiff.

Both parties claim title under Deputy. On the twentieth day of March, 1858, Deputy executed to the defendant a title bond, in the penal sum of $1,875, by the conditions of which, after setting forth that the defendant had contracted to purchase of him the undivided half of the lots in controversy, and that the defendant was that day in peaceable possession of the premises in common with him, with the full right to an undivided half of all the rents and profits of the premises from and after that date, and that he had executed his note for $1,875, due in twelve months, as the price of the land, it was agreed that on the payment of the note and one-half of all the taxes thereafter assessed on the premises, Deputy was to make, execute, and acknowledge to the defendant a good and sufficient deed for the conveyance of the premises, and then the bond to be void. This agreement or title-bond was duly recorded on the third day of May, 1858. On the eighth day of July, 1858, Deputy conveyed the premises to one Stapleford, and on the eighth day of September, 1858, Stapleford conveyed the same to the plaintiff.

The agreement executed by Deputy to the defendant clearly

Willis *v.* Wozencraft.

vested in the latter the equitable title as vendee, with the possession and right of possession of the property sold, being the undivided one-half of the premises.   To a certain extent they became tenants in common of the property, Deputy holding the legal title to the entire estate, subject to the equitable title to the undivided half vested in the defendant, and the latter having the equitable title to the half, and the possession under it.   Both Stapleford and the plaintiff had notice of the rights of the defendant by the record of the agreement, and his possession under it.   The defendant seems to have recognized her rights, as, in September, 1858, she entered into and took possession of portions of the house situated on the premises, occupying several suits of rooms in it, to which the defendant seems to have made no objection.   She continued in possession for some time, and there is no evidence that the defendant required her to leave.   The Court found that the defendant was in the possession, " holding adversely to the plaintiff, and denies her title to an undivided half of the premises."   This seems to be founded entirely upon a remark of one witness, H. M. Willis, that the defendant " is now in possession of the premises, holding against plaintiff, and denies her title."   No explanation was given or circumstances stated corroborating this remark.   It nowhere appears that the plaintiff ever notified him of her title, or ever demanded the possession, or requested to be let into the possession of her share with him, nor are there any special facts tending to show either an actual or constructive ouster of the plaintiff by the defendant, and we think neither this statement of the witness, nor the facts as found by the Court, are sufficient to establish an ouster.

The rights of the parties to the possession of this property depend entirely upon the agreement.   There is no evidence showing whether the defendant ever paid the purchase money or not, and no proof that payment was ever demanded, or any other facts showing an abandonment by him of the purchase or a refusal by him to complete it.   No proof was offered that Deputy, or those claiming under him, ever tendered a deed in pursuance of the agreement, or offered to deliver it upon payment of the purchase money.   He may or may not have paid the purchase money at the time it was due, but the holder of the note had a perfect right to extend the

Willis *v.* Wozencraft.

time of payment or grant any indulgence he might see proper, and no one had any right to complain. The right to a conveyance was dependent upon the payment of the purchase money, but the right of possession was, under the agreement, immediate and continuous, and not dependent upon such payment. Deputy had a clear right to make such an agreement, and it bound him and the plaintiff claiming under him. The duty of a Court is to enforce contracts fairly and honestly made. The defendant has lost no rights vested in him under this agreement, and the right of possession conferred by it is clearly a good defense to this action. The fact that the legal title to this undivided half of the premises is vested in the plaintiff, and that the defendant's title thereto is merely equitable, can make no difference. A mere equitable title to land, if it is of such a character as entitles the holder to the possession in equity, is a sufficient defense, under our system of practice, to an action for the possession, brought even by the holder of the legal title. For, whenever a right claimed under the rules of the common law is denied, or governed, or controlled by the principles administered by Courts of Equity, the latter will prevail over the former, and it is the duty of the Courts in administering justice to decide and render judgment accordingly. It follows that it is the duty of the plaintiff to show both a legal and equitable right to the possession before she is entitled to recover. It is a general rule, however, that proof of a legal title is sufficient, as the presumption is that the holder of the legal title is entitled to the possession ; but this presumption is liable to be rebutted by proof of an equitable title in another, of a character to carry the right of possession. In the present case the defendant showed more than the mere equitable title in the special agreement for the possession.

The respondent refers us to the case of *Gavin* v. *Hagen* (15 Cal. 208), in which it was held that a vendee of real estate, under a contract of purchase which was silent as to possession, had no right to the possession until a performance of the conditions of the contract to entitle him to a deed, and that the vendor or his assignee could maintain an action to recover the possession against the vendee at any time before such performance. There are very strong grounds for doubting the correctness of that decision upon these

points, especially as the rules of equity upon the question seem to have been entirely overlooked, and it may be well to refer to them, because, as we have shown, they should govern and control in cases of this kind.

The general principle is that, from the time of the contract for the sale of the land, the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. And every subsequent purchaser from either, with notice, becomes subject to the same equities as the party would be from whom he purchased. Courts of Equity treat such contracts *precisely as if they had been specifically executed.* The vendee is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money. This is a consequence of the common doctrine of Courts of Equity, that where things are agreed to be done they are to be treated for many purposes as if they were actually done. (2 Story's Equity, Secs. 789, 790, 1212.) A purchaser may, with the concurrence of the vendor, safely take possession of the estate at the time the contract is entered into. (1 Sugd. on Vendors, 9, 12.) Where a purchaser is let into possession on a treaty for purchase, he does not become tenant to the seller; and if the seller cannot make a title, it is doubtful whether an action will, under any circumstances, lie against the purchaser. (1 Sugd. on Vendors, 263, 311.) Such possession is lawful until the vendor puts an end to the contract. (*Jackson* v. *Moncrief*, 5 Wend. 29.) And an action for rents and profits, or use and occupation, will not lie against a vendee where the contract of sale, though unperformed, is still in full force. (*Johnson* v. *Beauchamp*, 9 Dana, 125; *Jones* v. *Tipton*, 2 Id. 295; *Howard* v. *Shaw*, 8 M. & W. 118; *Little* v. *Pearson*, 7 Pick. 301.) And as the possession of the vendee is lawful, an ejectment will not lie against the purchaser without a demand of possession and refusal to quit. (1 Sugd. on Vendors, 264, 312.) The taking possession by the vendee is a part performance of the contract in equity, sufficient to take the contract out of the Statute of Frauds, and the contract prevents his being treated as a trespasser. (*Arguello* v. *Edinger*, 10 Cal. 159.) The position of a vendor where the purchaser is in possession under the

contract is analogous to that of a mortgagee. (*Salmon* v. *Hoffman*, 2 Cal. 143.)

In Pennsylvania, where they have no Courts of Chancery, the Courts have administered equity in common law actions, and in actions of ejectment they enforce the rights of the parties in accordance with the rules and principles of equity. In that respect their practice is analogous to that of this State under the Code. The equitable title for many purposes is treated in the same manner as the legal title; equity considering that as done which a Chancellor would decree to be done, and for this reason the owner of the equitable title may support ejectment (*Schuylkill Nav. Co.* v. *Farr*, 4 Watts & Sergeant, 374; *Willing* v. *Brown*, 7 S. & R., 467; *Thomas* v. *Wright*, 9 Id. 91) even against the holder of the legal title. (*Presbyterian Congregation* v. *Johnson*, 1 Watts & Serg. 56.)

In ejectment by the vendor against the vendee in possession, the latter may maintain the possession, provided he has complied with his contract, or offers to comply with it by a tender of the purchase money on the trial of the cause. The rights of the defendant are not defeated by non-payment of the purchase money when it became due. (*Marlin* v. *Willink*, 7 S. & R. 297.) And the vendor cannot turn the vendee out of possession without rescinding the bargain, restoring the purchase money paid, and paying for the intermediate improvements. (*Richardson* v. *Kuhn*, 6 Watts, 299.) When by the terms of the contract possession was to be delivered before payment of the purchase money, and it was so delivered, after which the vendee was ousted by the vendor: *held*, he had a right to recover the possession without paying the purchase money. (*Bassler* v. *Neesly*, 2 S. & R. 355.) And the vendee may maintain ejectment in such case, though the contract is silent about the possession, where he went into possession with the consent of the vendor. (*Harris* v. *Bell*, 10 S. & R. 39.) And the vendor in such case is chargeable with the rents and profits for the time he is thus in possession, which may be applied on the unpaid purchase money. (*Wykoff* v. *Wykoff*, 8 Watts & Serg. 481; *Ives* v. *Cress*, 5 Barr. 188; *Hull* v. *Vaughn*, 6 Price's Ex. 157.) So much is the vendee considered, in contemplation of

equity, as actually seized of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance, and he will be entitled to any benefit which may accrue to it in the interval, because by the contract he is the owner of the premises to every intent and purpose in equity. (*Richter* v. *Selin*, 8 S. & R. 440; *Paine* v. *Meller*, 6 Vesey, 349; 1 Sugden on Vendors, 330, 338.)

The case of *Gaven* v. *Hagen* (15 Cal. 208), however, differs very essentially from the present, in this—that there was no stipulation that the vendee was to have the possession, as in the present case, and it is not therefore in point. It is also objected that the defendant in his answer describes this agreement as a conveyance of the premises, when in fact it was only an agreement to convey. We do not deem that this makes any essential difference, as the instrument is sufficiently described to identify it, and the plaintiff is not injured by a mistaken statement of its legal effect.

The judgment in this case was for the possession of the entire estate, in which respect it is clearly erroneous, for the plaintiff is not entitled under the findings to a judgment for more than the undivided half of the premises, and not even for that, except upon proof of an ouster of the plaintiff by the defendant.

The judgment is reversed and the cause remanded for a new trial.

On petition for rehearing, CROCKER, J. delivered the following opinion—NORTON, J. concurring:

The questions involved in this case are important, and as the counsel for the plaintiff in their petition for a rehearing have referred to some authorities not cited before, it may be proper to notice them.

Whether, in equity, a vendee, in a simple contract to convey at some future time, which is silent about the possession, has a right to take and hold possession before the conveyance, is a question not before us, as the contract in this case specially gives him the right of possession. But it is now urged that this right of possession extends only to the time that the purchase money became due, and if the money was not then paid the right of possession in the ven-

dee ceased, and the same revested in the vendor. In this the plaintiff is in error. Such are not the terms of the contract, nor is such the proper equitable construction of it. There are no words in the agreement thus limiting the right of possession vested in the vendee. In support of the position that the law so construes it, the plaintiff cites us to the cases of *Wright* v. *Moore* (21 Wend. 230), and *Mitchell* v. *De Roche* (1 Yeates, 12).

The case in Wendell was an action of ejectment at law, and therefore governed purely by legal principles. The agreement of the vendor contained a covenant that the vendee might " have quiet and full possession of the said premises at any time after the payment " of the first installment of the purchase money. The Court say that " though the defendant's equitable title may be clear and perfect, its enforcement belongs exclusively to chancery." But even without that remark the Court based its judgment entirely upon the legal principles governing such cases, and it does not, therefore, govern the present case. The case in Yeates is not in point, as it does not appear that there was any agreement on the part of the vendor that the vendee should take and hold the possession. That was an early case in Pennsylvania, in which these questions do not seem to have been fully considered, and it is substantially overruled by the later decisions of that Court referred to in our former opinion.

The question whether a demand and notice to quit is necessary in a case of this kind was not presented by the defendant as a point in the case, and the reference to it in our former opinion was not for the purpose of settling or determining it, but merely as showing how the rights of vendor and vendee were treated by writers upon this subject and the authorities.

The plaintiff insists that the decision of this Court leaves her with a mere barren title, and that leaving the defendant in possession virtually divests her of her title. The plaintiff purchased the mere legal title, subject to the equitable title of the defendant. Equity deems the interest on the purchase money as an equivalent for the value of the rents and profits, or the use and occupation of the premises by the defendant. Equity treats the vendee as the owner of the property, and as such entitled to its rents and profits ;

and the vendor as the owner of the purchase money, and as such entitled to the interest thereon.    (2 Sugden on Vendors, 254, 793, citing numerous cases.)    If the plaintiff is the owner of or entitled to receive the  purchase money due from the defendant, she has an ample remedy to enforce the  vendor's lien in equity, and have the interest purchased by  the  defendant sold  for the payment of the debt, and the interest she will receive will  be an equivalent for the possession.    If she is not entitled to the purchase money, she holds the mere legal  title, subject  to the equities of  the defendant under the agreement.    As that agreement  gives the defendant the right to the possession, to oust him from that  possession would be divesting him of a right vested in him by the agreement.    The holder of the demand for the  purchase money has the right to grant the defendant such lenity as  he sees fit about its  payment, and the plaintiff has no right to  complain that the  defendant has not paid the purchase money, unless it is due to her, when she has an ample remedy for enforcing  that demand.    We see no valid reason for granting a rehearing in this case.

The rehearing is therefore denied.