[No. 3,711.]

## HAUS H. BUHNE v. SETH P. CHISM.

SELECTION OF SEMINARY LAND BY THE STATE.—The selection by the State of public land as a portion of the seventy-two sections granted to the State for the use of a seminary of learning, even if approved by the Register and Receiver of the Local Land Office, does not confer a title on the State until the selection is approved by the Secretary of the Interior, and the plaintiff must prove such approval.

SELECTION OF STATE LAND UNDER ACT OF JULY 23, 1866.—Land selected by the State prior to July 23, 1866, as a portion of the grants of public land made by Congress, does not become the property of the State under the curative Act of Congress of July 23, 1866, until the selection has been certified over to the State by the Commissioner of the General Land Office.

EJECTMENT.—The plaintiff in ejectment can recover only on the legal title.

APPEAL from the District Court, Eighth Judicial District, Humboldt County.

The complaint was in the usual form, and averred the plaintiff's ownership and seizin on the first day of January, 1872, and the ouster on the second day of January, 1872. The defendant denied the allegations of the complaint, and set up that the United States had continuously, since May 23, 1867, occupied the land for light-house purposes, and that he was the keeper of the light-house, employed by the United States at stipulated wages, and that he claimed no interest in the demanded premises. Broderson obtained his patent from the State on the 19th day of January, 1861; and on the 7th day of April, 1862, conveyed to the plaintiff. On the 8th day of June, 1866, the President made an order reserving a part of the land for light-house purposes, and May 23, 1867, he made an order reserving the remainder. The defendant was the light-house keeper. The defendant recovered judgment. The plaintiff appealed.

The other facts are stated in the opinion.

*Buck & Stafford* and *G. W. Spaulding,* for the Appellant.

The grant above referred to is a present grant to the State of California, only wanting identity to make it perfect.

By the Act the title to seventy-two sections of land of the character of that in controversy vested in the State of California. (*Van Valkenburg* v. *McCloud*, 21 Cal. p. 330; *Higgins* v. *Holton*, 25 Cal. p. 252; Lester's Land Laws, pp. 244 and 264; *Cooper* v. *Roberts*, 18 How. p. 179; *Foley* v. *Harrison*, 15 How. p. 441.) The State was vested with full power to select and locate the very land in controversy, because it answers the description of land granted to the State. As soon as the selection was made the title passed to it. (*Rutherford* v. *Green's heirs*, 2 Wheat. p. 196; *Lessieur* v. *Brice*, 12 Howard, p. 76; *Bludworth* v. *Lake*, 33 Cal. p. 262.) Plaintiff's grantor was a *bona fide* purchaser from the State. The land was sold to plaintiff's grantor in such manner as would have passed and did pass the State's title at the time the selection was made. (*Toland* v. *Mandell*, 38 Cal. p. 42; *Hodapp* v. *Sharp*, 40 Cal. p. 72.) If the selection in this case has been erroneous in any manner, the Act of Congress of July 23, 1866, has confirmed the selection. (14 U. S. Statutes, p. 218.) A confirmation by Act of Congress vests in the confirmee the right of the United States, and a patent if issued could only be evidence of this. (*Stoddard* v. *Chambers*, 2 How. pp. 316 and 372.) A confirmation by law is as fully, to all intents and purposes, a grant as if it contained in terms a grant *de novo*. And such grant, or confirmation, vests an indefeasible and irrevocable title. (3 Washburn on Real Property, p. 173, and cases there cited, * p. 525.)

*L. D. Latimer*, for the Respondent.

The following propositions are believed to be well settled: 1st. That the title to no particular tract of the land donated to this State by Congress (unless it may be swamp or overflowed), vests in the State until after the selection and location of such particular tract by the State, in the manner prescribed by law, and the approval of such selection and location by the United States, or its proper officers. 2d. That in making such selection and location, the provisions of the law relating thereto must be strictly pursued. 3d. That the party claiming under the State must prove the

performance of all the acts required by law to constitute such selection and location.

The Act of Congress donating to the State the seventy-two sections, provides that all selections made by the State shall be "subject to the approval of the Secretary of the Interior." (See Sec. 12, Act of March 3, 1853; 10 Statutes at Large, 244.)

This being one of the conditions of the grant itself, it is clear that until such approval was had, the State could acquire no title to the land selected. There is not even an attempt to show such approval in this case. Neither the Register or Receiver can certify or list land over to the State, nor approve selections or locations.

Their duty is simply to receive the applications, note the selections or locations on their plats, and report the same to the Commissioner of the General Land Office. Their powers are limited. They cannot even decide a contest between preëmption claimants. They must take the testimony; and may give their opinion to the Commissioner on the merits of the contest (which, however, is merely advisory). There are but two officers who can decide; originally, the Commissioner, and, on appeal, the Secretary of the Interior.

But, further than this, even if the Act of 1866 did confirm this selection, it does not help the plaintiff. The right of the State, or its grantee, would still be but inchoate, the title remaining in the United States until the land shall be certified over to the State by the Commissioner of the General Land Office. There is no evidence in the record that this land has been so certified over, and it is conceded by counsel for appellants that it has not.

The land in controversy had been reserved, and appropriated by the United States before the attempted selection by the State.

The tract of land in question is known as "Cape Mendocino."

On the 18th day of August, 1856, Congress, by Act, authorized and appropriated forty thousand dollars for the construction of a first-class light-house at "Cape Mendo-

cino," *i. e.*, upon the land described in the complaint. (11 Statutes at Large, 100.) June 20, 1860, Congress made another appropriation of eighty thousand dollars for the same purpose. (12 Statutes at Large, 36.) This was a reservation and appropriation of this land by the United States. In the *United States* v. *Fitzgerald*, 15 Peters, 421, it is said:

"If the Act had directed that the light-house should be built on this particular tract, according to the decision of this Court in *Wilcox* v. *Jackson*, 13 Peters, 498, it would have been such an appropriation, within the meaning of the Act of the 29th of May, 1830, as would have deprived the defendants of their right of preëmption."·

By the Court, CROCKETT, J.:

The action is ejectment, to recover from the light-house keepers the possession of the light-house erected by the United States at Cape Mendocino, together with the tract of land on which it stands. A judgment having been entered for the defendants, the plaintiff appeals on the judgment-roll, claiming that, on the findings of fact, the plaintiff is entitled to recover.

The plaintiff claims under a patent from the State of California, founded on an alleged selection by this State of the land in controversy, as a portion of the seventy-two sections donated to the State by the Act of Congress of March 3, 1853, for the use of a seminary of learning. (10 Statutes at Large, 248.)

Section twelve of the Act provides for the selection of the land " by the Governor of the State, or any person he may designate for that purpose, in legal sub-divisions of not less than a quarter-section of any of the unsold, unoccupied and unappropriated public lands therein, subject to the approval of the Secretary of the Interior, and to be disposed of as the Legislature shall direct."

On the 23d of April, 1858, the Legislature passed an Act providing for the selection and sale of these lands (Statutes 1858, p. 248); and the plaintiff claims that the pro-

visions of the Act were complied with in the selection of this land. It appears from the findings that in June, 1860, one Broderson applied to the State Locating Agent for that district to purchase this tract; that the agent accepted the offer on condition that the location should "be made and approved by the United States;" that the Locating Agent applied to the United States Register and Receiver for that district for the land on behalf of the State, under the Act of March 3, 1853; that the Register and Receiver entertained the application, and approved the location; that the State Surveyor-General also approved the location, and thereupon the Governor issued a patent to Broderson in the usual form. The plaintiff holds this title. It does not appear from the findings that the Secretary of the Interior ever approved the selection and location; on the contrary, it appears that in June, 1866, and May, 1867, the land in controversy was reserved for light-house purposes, by order of the President.

We think the approval of the Secretary of the Interior was essential to a valid selection and location by the State; and that it was incumbent on the plaintiff to show affirmatively that he had approved it. The Act of March 3, 1853, provides in terms that the selection shall be subject to his approval, and we have no authority to dispense with it. This condition was doubtless inserted for the reason that, in the opinion of the highest officer of the Land Department, the land might be required in the future for public uses; and it was intended that he should exercise his judgment in the premises before the selection should be valid. But, however this may be, the statute is imperative that the selection shall be "subject" to his approval, and it is not shown that he has ever approved it, or, indeed, that he had any knowledge of the selection until after the land was reserved by the President.

But the plaintiff contends that whatever defects, if any, existed in his title, were cured by the Act of Congress of July 23, 1866, to quiet land titles in California. (14 Statutes at Large, 218.) But it does not appear from the findings (which include all the facts in issue) that this land has ever

been listed or certified over to the State by the Commissioner of the General Land Office; and in *Hodapp* v. *Sharp*, 40 Cal. 69, we held that under the Act of July 23, 1866, the title does not vest in the State until this is done.

The plaintiff in ejectment can recover only on the legal title; and on our construction of the Act of 1866, he does not acquire this under that Act until the lands are listed over to the State by the Commissioner. We are not, however, to be understood as intimating an opinion that the plaintiff would or would not have been entitled to recover, if this fact had been shown. In the view we take of the case, it is unnecessary to decide that point, or the other questions discussed by counsel.

Judgment and order affirmed. Remittitur forthwith.