[Sac. No. 750.    Department Two.— February 28, 1901.]

## MANUEL SOUSA, Respondent, v. MANUEL PEREIRA, Appellant.

EJECTMENT — HOMESTEAD CLAIM — PRIOR RAILROAD GRANT — FINAL SURVEY. — A plaintiff in ejectment cannot recover upon proof of a homestead claim entered in the land department of the United States, and of a receiver's receipt for the land in controversy, where it appears that, prior to the filing of the homestead claim, the title to the land had passed from the United States by grant to a railroad company, within its primary limits, upon approval of a final government survey, made long prior to such filing.

ID. — DECISION OF LAND DEPARTMENT — QUESTION OF LAW. — The court is not governed by the decision of the land department upon a pure question of law arising upon undisputed evidence.

ID. — SELECTION OF LIEU LAND — POWER OF RAILROAD COMPANY. — A railroad company has no power to relinquish land to which it has a good title under a grant from the United States, within its primary limits, for the purpose of making an indemnity selection of other land in lieu thereof.

ID. — RECOVERY IN EJECTMENT — STRENGTH OF PLAINTIFF'S TITLE — RIGHT OF DEFENDANT TO JUDGMENT — PRESCRIPTIVE TITLE IMMATE-RIAL. — The plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's title; and where the plaintiff shows no title, the defendant in possession is entitled to judgment, regardless of whether he has acquired a prescriptive title by adverse possession or not.

APPEAL from a judgment of the Superior Court of Siskiyou County and from an order denying a new trial. J. S. Beard, Judge.

The facts are stated in the opinion.

J. H. Magoffey, for Appellant.

L. F. Coburn, and O'Neill & Butler, for Respondent.

GRAY, C.—The action is in ejectment, and was begun September 28, 1897. On the trial before the court without a jury, plaintiff had judgment, from which and from an order denying him a new trial the defendant appeals.

The plaintiff claims ownership, subject to the paramount title of the government, in the whole of the south half of the northwest quarter and lots 2 and 3 of section 33, township 44 north, range 8 west, Mount Diablo meridian, as designated on the amended plat of said township dated August 9, 1890, and bases said claim upon a homestead application and receiver's receipt dated June 8, 1896. He alleges in his complaint that since June 8, 1896, defendant has been in the wrongful possession of about thirty acres of the northerly part thereof, and prays judgment for the recovery of the possession of said northerly part.

In his answer, among other defenses, defendant sets up that the land in controversy is a portion of the land included in the act entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the Central Pacific railroad in California, to Portland in Oregon," passed by the Congress of the United States and approved July 25, 1866; that the California and Oregon Railroad Company and its successors built, completed, constructed, and operated said railroad in accordance with the terms of said act; that this defendant and his predecessors in interest have been in the actual, adverse, open, and notorious possession of said lands for more than thirty years last past, adversely to the whole world, under claim of ownership; and that plaintiff's claim, if any he has, is barred by the provisions of sections 318 and 319 of the Code of Civil Procedure of the state of California. Plaintiff's title is also denied in the answer.

There is no conflict in the evidence as to the controlling facts in the case, and said facts are, in substance, as follows: In 1856, one C. C. Tracy, "a United States deputy surveyor, under a contract with the U.S. government, surveyed a tract of land in this [Siskiyou] county, in township 44 north, range

8 west, M. D. M., described as follows: Beginning at the northeast corner of sec. 36, Tp. 44 N., R. 9 W., M. D. M.; thence east three miles; thence south one half-mile; thence west three miles; thence north one half-mile to the place of beginning.

"The said strip of land being platted and described by the United States Land Department as the N. ½ of Sec. 31, N. ½ of Sec. 32, and N. ½ of Sec. 33, Tp. 44 N., R. 8 W., M. D. M., and said survey was approved by the U. S. government on the 6th day of October, 1856. But the said Tp. 44 N., R. 8 W., as a whole, was not surveyed in the field until 1880, when one W. F. Benson, a United States deputy surveyor, under a contract with the U. S. government, surveyed the whole of said Tp. 44 N., R. 8 W., by which survey it appeared that the south ½ of northwest ¼ and south ½ of northeast ¼ of Sec. 32, and the S. ½ of N. W. ¼ and S. ½ of N. E. ¼ of Sec. 33, are wholly south and about one quarter of a mile west from the land described as such by the Tracy survey, and are wholly separated therefrom by a strip of land varying in width from north to south from about 70 links to 1.20 chains, and which narrow strip of land has been by the United States government segregated and designated on the amended official plat of said Tp. 44 N., R. 8 W., M. D. M., as lots properly numbered, those in section 33 and involved in this case being numbered 2 and 3.

"That the tract of land described by the Tracy survey as the N. W. ¼ of Sec. 33 is, according to the last approved plat of said township, approximately the N. E. ¼ of N. W. ¼ and N. W. ¼ of N. E. ¼ of Sec. 33, and the S. E. ¼ of S. W. ¼ and S. W. ¼ of S. E. ¼ of Section 28.

"That on the 6th day of January, 1859, the state of California selected the last described tract of land with other land, which selection was duly approved March 14, 1866, and by mesne conveyances the defendant herein became, and he is now, the owner and in possession thereof."

In addition to the foregoing facts, which are quoted from the findings, the evidence, without conflict, shows that the Benson survey was duly approved in 1881; that the land here in controversy passed to the railroad company by the act of 1866, referred to in the answer, it being part of an odd-numbered section, and within the limits prescribed in that act. The map showing the location of the said railroad (then called the California and Oregon) was filed in the general land-office in 1871.

The land in controversy is shown to consist of a little upwards of thirty-six acres, and is all south of the survey made by Tracy in 1856, and none of it is within that survey.

On the foregoing facts we think that the evidence shows that there was no title in the government to the land in controversy when plaintiff filed on it as a homestead, and that, consequently, plaintiff acquired no title by reason of such filing, and the finding that he is the owner and entitled to the possession is contrary to the undisputed evidence. We are not governed by the decision of the land department on this question, as it is purely a question of law arising upon undisputed evidence. (*Wormouth* v. *Gardner*, 112 Cal. 506.) It seems to be admitted by respondent that the title to the land passed to the railroad company, but it is contended that the railroad company relinquished its title when it made the indemnity selection in place of it. If the railroad company relinquished anything in said section 33, it must have been some part of the land that had passed out of the government of the United States before the railroad title under the grant had attached to it. It had no power to relinquish a good title to one piece of property for the purpose of selecting another from the government; it was empowered only to relinquish its *claim* where it had never received title, and select in lieu thereof other lands of the government, beyond the twenty-mile limit, and within thirty miles from the line of the railroad. Indeed, the relinquishment describes the land relinquished as in "list 16, state of California, Mar. 1866," which shows that it must have been included in the Tracy survey, as it was from this survey only that land was listed to the state in March, 1866, as heretofore shown. There was, then, no relinquishment of the railroad title in the land here in controversy, and no intention to relinquish it, for this land, as we have seen, was not included in the Tracy survey, and the title to it, therefore, never passed to the state, but when it passed out of the government it passed into the railroad company. It passed into the railroad company certainly as early as the approval of the survey in 1881, as the map locating the railroad had been duly filed some ten years prior to that time. (*Southern Pacific R.R. Co.* v. *Whitaker*, 109 Cal. 268.) Hence the government had nothing to convey to a homestead claimant; and as the plaintiff must recover on the strength of his own title, and not on the weakness

of his adversary's title, it would follow that defendant would be entitled to judgment, leaving it unnecessary to determine the question presented as to whether defendant had acquired a title by adverse possession.

The judgment and order appealed from should be reversed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

McFarland, J., Temple, J., Henshaw, J.