[Civ. No. 163. Third Appellate District.—February 15, 1906.]

## MARY E. ROBERTS et al., Respondents, v. MATTHEW WARD, Appellant.

TOWNSITE—CONVEYANCE BY COUNTY JUDGE—OCCUPANT.—A townsite, laid out on government land, which under the act of Congress (Rev. Stats., sec. 2387; U. S. Comp. Stats. 1901, p. 1457) was patented by the government of the United States to the county judge in trust for the several use, and benefit of the occupants, can only be conveyed by him to the occupants; and an attempted conveyance to one not an occupant conveys no title.

EJECTMENT—PLAINTIFF MUST RELY ON HIS OWN TITLE.—A plaintiff in ejectment must show a satisfactory title in himself before he can recover. It is no advantage to him to merely show that the defendant's claim of title is defective. He must show both a legal title and a right of possession.

APPEAL from a judgment of the Superior Court of Tehama County and from an order refusing a new trial. C. M. Head, Judge.

The facts are stated in the opinion of the court.

Johnson & Chase, and J. J. Wells, for Appellant.

McCoy & Gans, for Respondents.

BUCKLES, J.—This is an action in ejectment to recover a strip of land about six feet wide and one hundred and fifteen feet deep off the south side of lot 9 in block 11 in the town of Red Bluff. Judgment was for plaintiffs. The appeal is from the judgment and order denying a motion for a new trial.

The complainant alleges that plaintiffs are owners in fee of the disputed strip. The answer denies this and also sets up section 318 of the Code of Civil Procedure as a bar, with the further defense of the establishment of a boundary between plaintiffs and defendant by acquiescence for at least thirty-eight years. The land in dispute is a part of the townsite of Red Bluff, which townsite was laid out on government land, and under act of Congress, Revised Statutes, 2387 (U. S. Comp. Stats. 1901, p. 1457), was, by the government of the United States, patented to the county judge of Tehama county in trust for the several use and benefit of the occupants. Ever since November 25, 1867, the defendant has occupied this six feet of the south side of said lot 9 as a part of his residence grounds and had the same inclosed with his other grounds by a substantial fence. The patent for the townsite was issued in 1866. Plaintiffs' first grant of title to lot 9 was simply by designation lot 9, and was in the year 1867. The county judge made several certificates of title to lot 9, designating it as lot 9, giving no metes and bounds, to one John F. Jones, July 6, 1868, who never was in possession of any part of said lot 9, never occupied it, and, so far as appears, never had any right to do so. This certificate, therefore, conveyed to him no title. (*Biddick* v. *Kobler,* 110 Cal. 191, [42 Pac. 578].) Again, the county judge made certificate of title to lot 9 to B. W. Stewart who was an occupant of said lot 9, except the six feet in controversy. The lot was not described by metes and bounds, but simply as lot 9. Again, on July 31, 1878, the county judge made a certificate of title to J. B. Roberts to said lot, who was then an occupant of said lot 9, except the six feet in controversy, as a grantee from Stewart.

There is no question but plaintiffs established a good title to all of said lot 9, except that part in dispute here. Under the trust evidenced by the patent of the United States government, the county judge could convey to no one but an occupant— one who was in actual bona fide possession thereof at the time. (*Biddick* v. *Kobler, supra.*) A plaintiff in ejectment must show a satisfactory title in himself before he can recover. It is no advantage to him to merely show that the defendant's claim of title is defective. He must show both a legal title and possession, or a right of possession. (*Buhne* v. *Chism,* 48 Cal. 467; *Willus* v. *Wozencroft,* 22 Cal. 607; *Harris* v. *Kellogg,* 117 Cal. 484, [49 Pac. 708] ; *Sousa* v. *Pereira,* 132 Cal. 77, [64 Pac. 90].)

The plaintiffs have no occupancy whatever, and no legal right to occupy as against defendant who has shown an undisputed possession and actual occupancy in himself and grantor for forty years. There is no conflict of these facts which can be said to be substantial. It is claimed that defendant has not been in exclusive, uninterrupted occupancy of more than three feet of the said six feet all of the time, but the only testimony which in any way tends to establish this fact is that of the witness W. H. Cox, called by the plaintiffs in rebuttal. Cox was a partner with J. B. Roberts in the livery business from about 1882, to the time Roberts died in 1891. Their stables and corrals occupied lots 10, 11, 12, 13, 14, and that part of 9 north of defendant's inclosure, and of the said six feet in dispute. This witness says when he went there in 1882, he knew the fence and that the division fence was not exactly on the line between lots 8 and 9. It was an old fence, and some years thereafter it was rebuilt. "The old fence was right near that fig tree, right up to it. I think my recollection is good as to that; there were circumstances that I could go by; I am very sure that it was up to the tree. . . . . The new fence was not put on the true line and it wasn't where the fence was before. The fence now is fully three feet, if not four, from the big fig tree in Mr. Ward's yard. I am sure the old fence was right up to that tree." When pressed for his source of information as to the fence having been moved out three or four feet, he answered: "Well, I have a circumstance to go by that reminds me; I am pretty sure of it." Question by defendant's counsel: "You are pretty sure of it; will you swear

it wasn't on that line? (The new fence on the line of the old.) A. Yes, sir. Q. You will swear it wasn't on the line? A. Well, yes, sir. That it's moved over some more, to the best of my recollection it was moved over three feet.'' When asked to relate the circumstance which fixed in his mind that the old fence was back by the big fig tree, he answered: ''Where the old fence stood it was near the tree, right up against the tree, and one of my horses—I had a mare that jumped the fence— the other horses crowded her up in the corner and she jumped the fence and jumped through the fork of the tree; and there where the fence stands here, the fence is so far away, a horse couldn't do it at all. Q. (By Plaintiff's Attorney.) That tree—the fork of the tree—that tree forks near the ground? A. Yes, sir; and spreads out wide, and the horse jumped the fence and jumped through the tree.'' This was the circumstance. Testifying further, he said: ''The tree forked out and she jumped from this side and went through into Mr. Ward's yard. Q. (By Counsel for Defendant.) Did you see the horse when she made that jump? A. No, sir; they told me about it; I see the tracks there; they were deep in the ground where they struck the ground. Q. You saw some tracks, did you, beyond the tree? A. Yes, sir; and the other is based on what they told me.''

It would thus seem that this witness' testimony that the fence had been moved three feet farther north is based upon the alleged fact that a horse of his jumped this fence in 1882, and at the same time jumped through the forks of a tree which stood near the fence, and that a horse could not jump the fence as it now stands and jump through the forks of the tree at the same time; and that the fact of the horse jumping the fence was not a fact within his knowledge, but was told to him by others. This evidence was clearly inadmissible, because hearsay. But there was no objection made to its admission and no motion to strike out, and it therefore remains in the case as testimony. No other witness was called to confirm this acrobatic feat of this horse, which does not appear to have been anything more than the ordinary livery horse, and coming, as this testimony does, as hearsay, it is entitled to but little, if any, weight. The testimony as to the tracks beyond the tree, which the witness observed himself, is entitled to little, if any, weight, because he does not pretend to say they were pointing in any particular direction. The defendant,

in his rebuttal, testified that the horse did not jump the fence at the point where the tree was. We think the testimony of the witness Cox so uncertain, so slight and trivial that it does not arise to the dignity of a contradiction of the fact established by all the other witnesses in the case who testified upon that point, including the witness Cramer, the carpenter who rebuilt the fence, that the fence stands now where it has always stood, to wit, six feet and two inches at one end and five feet and nine inches at the other end—north of the south line of said lot, according to the actual measurement made by the county surveyor on October 7, 1903.

There is, therefore, no substantial conflict in the evidence as to the fact that the defendant has been the occupant of that much of the south part of said lot 9, continuously, ever since the year 1867, and that under the trust created for the benefit of the occupants of lots in the Red Bluff townsite patent, he was and is entitled to continue to occupy the same. Under the said trust we deem it immaterial whether defendant or plaintiffs paid the taxes on said lot. This is a case in all material matters like *Biddick* v. *Kobler, supra.* The United States patent creating the trust was issued to the county judge of Tehama county, September 20, 1866, and there is no evidence in this case to indicate that plaintiffs or any of their grantors occupied, possessed or had a right to possess this six feet in controversy at the time this patent was granted. E. W. Darling was the first grantor mentioned and he conveyed to B. W. Stewart, on July 7, 1867, conveying lot 9 by its number. There is no evidence to show what his occupancy was, or how long he had been the owner of said lot 9. On the part of defendant there is no evidence to show how his grantors came to occupy said six feet. The immediate grantor of defendant to lots 5, 6, 7, and 8 was one C. F. Olinder, and the deed was executed November 25, 1867, and this is the grant under which defendant came into the occupancy of these six feet, for it was then fenced with other lots mentioned in the Olinder grant. The evidence shows, without conflict, that the grantor, Olinder, had possession of and was occupying said six feet, and had a line fence dividing it from the other part of said lot 9, for two years before defendant went into possession in 1867. According to this, then, defendant's grantor was in possession of this strip when the patent to the townsite was issued, and this precludes the idea of the six feet being occupied by any

of plaintiffs' grantors when the trust was created. We have thus seen that there is no evidence to support so much of the findings as would warrant the judgment.

The judgment is reversed, and the cause remanded for a new trial.

McLAUGHLIN, J.—For reasons fully stated in *Biddick* v.' *Kobler*, I concur in the judgment.

Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1906.