## LOTTA JACKSON v. OLIVER C. THORNTON.

(Filed June 15, 1899.)

1. REFEREE — *Findings Set Aside, When.* Where there is no evidence reasonably tending to support the finding of fact made by a referee, but there is an overwhelming prepreponderance of testimony against such finding, and the finding of fact is one which materially supports the conclusions of law made by the referee, the findings of fact and the conclusions should be set aside.

2. SAME — *Incompetent Evidence — Error.* Where three witnesses are permitted, over the objection of the opposite party, to testify before a referee upon matter of hearsay, which, if true, strongly support the findings of fact, it will be inferred that such testimony influenced the judgment of the referee, and the reception of such testimony is material error.

3. PUBLIC LANDS — *Claimants to Town Lots — Occupancy.* Where settlers have staked town lots, and have attempted to take peaceable possession of them, and have been prevented by force by one claiming the rightful possession thereof, from occupying or making any improvements thereon, such an attempt to stake and take possession of such lots is equivalent to the erection

of improvements as against him who prevented by force the stak-
ing of the lots and the improvement thereof, and will be regarded
as such as against any one attempting to set up a claim by,
through, or under him who exercised the force, if such attempts
at occupancy are not abandoned.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*
*James R. Keaton, District Judge.*

*B. F. Burwell, Selwin Douglas,* and *Mac Gregor Douglas,*
for plaintiff in error.

*Amos Green & Son,* for defendant in error.

Action by Oliver C. Thornton against Lotta Jackson.
Judgment for plaintiff, and defendant brings error. Re-
versed.

STATEMENT OF THE CASE.

This was an action brought by Thornton in the dis-
trict court of Oklahoma county, in which it was averred
that through fraud and collusion of the defendant, Jack-
son, and members of the town-site board of Oklahoma
City, Lotta Jackson had obtained the legal title to lots
21, 22, 23, 24, 25, and 26, in block 10, of the South Okla-
homa addition to Oklahoma City, by deed of conveyance
from the town-site board, when, under the facts and the
law, the legal title should have been vested in Thornton.
The interposition of the court was sought, in order that
a resulting trust might be declared in favor of Thornton,
and that Lotta Jackson might be required to convey the
legal title thereof to him. The amended petition, upon
which the case was tried, averred all the necessary legal
qualifications in the plaintiff which would have entitled
him to acquire town lots in the Territory of Oklahoma.

under the laws of the United States; that the lots, to which he claimed to have the superior equity, were settled upon and improved by the persons through whom he acquired his rights; that valuable improvements had been made thereon, consisting of houses, stable, fencing, well, etc.; that at the date of issuing the patent to the town-site board of trustees, on the 2d day of December, 1891, one Eli F. Hutchinson was in peaceful occupancy of the lots; that Hutchinson possessed all the qualifications entitling him, under the laws of the United States, to take and hold title thereof from the 15th day of September, 1891, down to the 31st day of December, 1891, when he sold and transferred, by a quit-claim deed, all of his title and interest to the lots to the plaintiff; that after the sale, Hutchinson continued to live upon the lots, as the tenant of the plaintiff, and occupied them up to and after the time when the plaintiff made the application to the twon-site board for deeds therefor; that in the month of March, 1892, the defendant, Jackson, entered and took forcible possession of one of the lots, against the protest of the tenants of the plaintiff, and thereafter broke down the fence and put a house on said lot, up to which time the plaintiff had exclusive and peaceful possession.

The defendant, together with Alta Bartell and Samuel Bartell, who had been made defendants, filed their joint answer, denying generally the allegations of the amended petition, and making specific averments of fraud and collusion between the plaintiff and Hutchinson. It was specifically averred by the defendants that the claim of the plaintiff was from the beginning fraudulent; that the deed from Eli Hutchinson to the plaintiff was executed long after the date alleged in plaintiff's petition; that the

real claim of the plaintiff is based wholly upon the settlement and improvement of a portion of the lots in controversy by one G. E. Thornton, now deceased, a brother of the plaintiff, who was disqualified from taking and holding said lots by reason of having entered the Oklahoma lands prior to noon of April 22, 1889, in violation of the law of congress of March 23, 1889, and of the president's proclamation thereunder, and that Hutchinson never had any interest, as a settler, purchaser, or otherwise, in the lots; that he never occupied them under any claim of ownership which could ripen into a title, nor placed any improvements thereon, nor became possessed of such improvements by purchase or otherwise; that Thornton made his first application for a conveyance of the lots before the town-site board on December 31, 1891; that at that time he did not make or assert any claim through the occupancy or possession of Hutchinson, or by virtue of any conveyance, but claimed solely by virtue of his own entry, settlement, and possession, and that he did not indicate at what time his entry was made; that about February 1, 1892, after the rejection of his application for deeds to the property, he filed an amended application, in which he did not set up or assert any right by virtue of Hutchinson's possession or occupancy, or of a deed from him, and claimed upon his own settlement, failing to fix the date of the settlement; that the application was held insufficient on the 19th day of February, 1892, after which he determined to intervene and obtain a settlement and occupancy on the part of Hutchinson, which should antedate the town-site entry, and to avail himself of this pretended and fictitious settlement of Hutchinson, to set up the claim that

Hutchinson was a settler under a claim for title to the lots, and to procure from him the deed which conveyed to the plaintiff a right gained before the said entry and segregation; and that this fraudulent scheme was a cloak to fraudulently defeat the claim of the defendants.

Plaintiff having replied, denying generally, the case was sent to a referee for findings of fact and conclusions of law, and thereafter a lare number (39 in all) of findings of fact were made by the referee, together with a number of conclusions of law. It is only necessary, for a review of the cause, so far as it is here made, to cite the following findings of fact: First. That previous to and at the time of the opening of the country, April 22, 1889, one George E. Thornton had built a residence on the quarter section, and resided thereon, and had the surrounding grounds inclosed by posts and wires. Second. That on the afternoon of April 22, 1889, the quarter section was settled on as a town site, and laid off in blocks, streets, lots, and alleys, and the same were numbered. * * Sixth. That no person ever made any improvements upon or obtained the occupancy of any part of the ground within said inclosure from April 22, 1889, until the fall of 1891, except as the tenants of said George E. Thornton, except said Stevenson, as mentioned in the fourth finding; and no person occupied or improved any portion of said lots, with the exception that some time in the spring or summer of 1889 one W. H. Albright staked lots 21 and 22, but did not take possession thereof or make any improvements thereon, he being prevented by Thornton. One John McClung also staked lots 23, 25, and 26 some time in May, 1889, but was prevented from occupying or making any improvements thereon by Thornton. And one J. N. Harvey staked lot 24, but did not occupy or improve

the same in any manner, being prevented by Thornton. None of the parties ever obtained any occupancy. The only thing being done by them was the mere staking. * * Eighth. That on September 23, 1891, the said George E. Thornton entered into an agreement with the said Eli F. Hutchinson whereby it was agreed between them that said Hutchinson should occupy said premises, and, in the event that it was decided that the said George E. Thornton was disqualified, then the said Hutchinson should have said lots, and be permitted to acquire title for himself. What he was to pay is not shown by the evidence. * * Eleventh. That on October 29, 1891, George E. Thornton died. * * Thirteenth. That some time in December, 1891, (the exact date is not shown,) the plaintiff, Oliver C. Thornton, a brother of George E. Thornton, came to Oklahoma City, and commenced to reside upon said lots; he having all the necessary qualifications to acquire title thereto. That said residence of Oliver C. Thornton was in conjunction with that of Hutchinson. That George E. Thornton was never married. That both Hutchinson and Thornton continued to reside upon said lots together until December 30, 1891. Fourteenth. That on December 30, 1891, or about that date, Hutchinson made a quit-claim deed for the lots—of all his right, title, and interest. The consideration for said deed is not shown, except that it was a valuable one. After the date of said deed, Hutchinson continued in possession of the said lots for the said Oliver C. Thornton, getting his rent for the care of said property. * * Eighteenth. That in December, 1891, William Albright filed an application for deed for lots 21 and 22. His application is referred to as "Exhibit F." Nineteenth. That on January 6, 1892, one J. N. Harvey made

application for a deed for lot number 24 in block 10.   His
application is referred to as "Exhibit G." Twentieth.
That on the 23d day of April, 1892, the application of
said Harvey was held insufficient, and said Harvey filed
an amended application, which is referred to as "Ex-
hibit H." Twenty-first. That on the 19th day of
June, 1892, said J. N. Harvey filed a second
amended application for said lot 24, which is re-
ferred to as "Exhibit I." *   *   Twenty-sixth.
That on said day said board held the said original and
amended application of the said Oliver C. Thornton to be
wholly insufficient on which to acquire title to said lots,
but gave him leave to amend the same. Twenty-seventh.
That on the 20th day of May, 1892, Oliver C. Thornton
filed with said board a motion to dismiss the application
of the other claimants, which the board refused to enter-
tain, for the reason that he had not amended his applica-
tion, and was not a contestant for said lots; and there-
fore said board proceeded to make allotments thereof as
in *ex parte* case.   Twenty-eighth.   That on May 24, 1892,
Oliver C. Thornton filed his appeal to the commissioner
of the general land office from said ruling of said board.
Twenty-ninth.   That after said appeal was taken, and
before the same had been disposed of by the commis-
sioner of the general land office, and on the ———— day
of ————, 1892, Samuel Bartell, the defendant herein,
filed with said town site board his relinquishment of any
claim he had on lot 26 in said block 10, and the board,
evidently only looking at the lots mentioned on the out-
side and indorsed on the back of the application of
Oliver C. Thornton, filed on December 31, 1891, thought
that the application of Thornton did not cover said lot
26, and that Mrs. Jackson was the only applicant there-

for, and executed to her a deed conveying to her said lot 26 in block 10, and while said appeal was pending before the commissioner of the general land office. * * Thirty-One. That some time in October, 1893, D. H. Hull, who had a short time previous been appointed administrator of the estate of George E. Thornton, sold and conveyed to Lotta Jackson all the right and interest of the estate of George E. Thornton in the improvements on said lot, and gave a bill of sale therefor, and in such bill of sale also purporting to convey the interest of the estate in said lots, the consideration therefor being the sum of two hundred dollars. Thirty-two. That after said decision was rendered, mentioned in finding 30 herein, the said Lotta Jackson filed with said town site board said bill of sale, and also quit-claim deed from J. N. Harvey to herself of lot claimed by him in his application, and also a quit-claim deed of Willam Albright for lots claimed by him in his application; and having, before making her own application, procured a quit-claim deed from said McClung for the lots staked by him, said board supposed the plaintiff herein to be the Thornton mentioned in said bill of sale as conveying his interest to Lotta Jackson in said improvements; the said town site board executed to the said Lotta Jackson a deed for lots 21, 22, 23, 24, and 25, on the application of Lotta Jackson, J. N. Harvey, and William Albright. * * Thirty-six. That the value of the improvements placed on said lots by George E. Thornton was about thirteen hundred dollars. * * Thirty-nine. That the defendant Lotta Jackson paid John McClung for his staker's right on lots 23, 25, and 26 three hundred and ninety dollars; that she paid William Albright for his staker's rights to lots 21 and 22, the sum of three

hundred dollars; that she paid J. N. Harvey for his staker's right to lot 24, seventy-five dollars; that she paid D. H. Hull for the interest in the estate of George E. Thornton and improvements on said lots, two hundred dollars; and that she has, ever since taking possession thereof, made expenditures in making improvements on said lots which would make the aggregate paid out by her, including the amount paid to said stakers and Thornton's estate, the sum of about fifteen hundred dollars.

The conclusions of law as found by the referee, were, in part, as follows: "Fourth. That said Eli F. Hutchinson having gone into possession of said lots under a conditional agreement with George E. Thornton that he should have the lots and acquire title thereto, if it was decided that Thornton was disquaified from acquiring title thereto, and it having been decided finally on the 16th day of October, 1891, that Thornton was disqualified from acquiring title to said lots, the said Hutchinson, under said agreement, then became and was the owner of said lots, and an occupant thereof. It could make no difference whether he paid a valuable consideration for said lots or not, as a gift would convey as good a title thereto as a purchaser, unless it would be as to existing creditors; and the defendant Lotta Jackson was not an existing creditor of the said George E. Thornton, and cannot be heard to question the validity of such transfer. Fifth. That Hutchinson continued to remain upon the lots, and was an actual occupant thereof. On December 2, 1891, the date that said town site was conveyed to said town site board No. 2 in trust for the benefit of the occupants thereof, and unless Lotta Jackson, or those under whom she claims, has shown prior

and better occupancy, then the equitable title to said lots would vest immediately in the *cestui que trust*, Eli F. Hutchinson; and, Hutchinson having conveyed all his interest to the plaintiff, the plaintiff now stands in the same relation to said lots as Hutchinson did.    Sixth. We find that at the date said town site was conveyed to said trustees, December 2, 1891, neither the defendant Lotta Jackson, nor any one under whom she claims, had ever been in possession of said lots or any portion thereof, nor had ever up to said time occupied or made any improvements thereon; and we do not understand that a mere intention to occupy or improve a town lot, and an attempt to do so, which was prevented, would constitute sufficient occupancy thereof, within the meaning of the town site laws."

The referee found in favor of the plaintiff, and filed his report, after exceptions were reserved by defendants, upon which judgment was afterwards entered by the court against the defendant, against her objection.

Opinion of the court by

McATEE, J.:    It is found as a fact by the referee that on September 8, 1891, George E. Thornton entered into an agreement with Hutchinson whereby it was agreed between them that Hutchinson should occupy the premises, and, in the event that it was decided that George E. Thornton was disqualified, then Hutchinson should have the lots, and be permitted to acquire title for himself. What he was to pay is not shown by the evidence. This is an important finding of fact.    It is necessary, to support the claim of the plaintiff, O. C. Thornton, that he should be able to show that he derived his interest from Hutchinson; and, to support any interest whatever

in Hutchinson, it was necessary to show that he had derived it by virtue of a possession which had begun and existed long prior to any claim which O. C. Thornton could set up by virtue of his own personal acts or possession. It is therefore necessary, in order to support the conclusion in favor of the plaintiff,(defendant in error here,) to show that Hutchinson was in fact in possession of the lots, and claiming them as his own, during the lifetime of G. E. Thornton. The testimony does not support this contention. J. W. Cudyback testified that about the 10th of April, 1893, he had a conversation with Hutchinson, in which "I merely asked him if he had any interest in or bought that place, [meaning the lots in question.] He said that he had not. I said I would not get myself into any trouble. He made the remark that, when he was taking care of any property for anybody, that he would stay with it. He just said that he was taking care of it for Mr. Thornton's estate," (that is, the estate of G. E.Thornton.) D.H.Hull,administrator of the estate of G. E. Thornton, testified that he sold the improvements on all the lots to the defendant, Mrs. Jackson, and that Mr. and Mrs. Hutchinson were living in "the big house" on the lots; that "I had Hutchinson in charge of it for the Thornton property;" that Hutchinson made no claim to the improvements; that he was in charge of it for the George E. Thornton estate. In reply to the question, "Did Hutchinson surrender the property to Mrs. Jackson after the sale of the same to Mrs. Jackson, and, if so, how soon?" Mr. Hull said, "I made arrangements with Mr. Hutchinson, in the presence of Mrs. Jackson, who bought the property, (and I think Judge Stewart was present,) to vacate the premises

within ten days. I have never heard any complaint. I think it was done." Bartell testified that two or three weeks after the death of Thornton, October, 1891, "I said to Hutchinson, 'What claim have you got on this property?' He said, 'None at all;' that he was simply taking care of it for the Thornton estate." Hutchinson himself testified that "I was first placed in possession by George E. Thornton, and, in the event it was held he could not hold, I was to have them" (the lots.) A few minutes later, in the course of the same examination, he said that he had gotten the lots from G. E. Thornton; "I paid him a valuable consideration;" and when he deeded the lots to Oliver C. Thornton, he was conveying a title which he had secured from G. E. Thornton, and that he himself had made no improvements upon the lots. "I made no improvements on the lots myself. I had those of George E. Thornton." And in answer to the question, "What improvements, if any, did Oliver C. Thornton put on these lots, or any of them, when did he make them, and what was their value?" he replied, "He got the improvements I acquired from George E. Thornton."

We have examined the evidence carefully. It does not support the eighth finding of fact, which was a material finding to the conclusion finally made in this case by the referee and by the court. There is no evidence reasonably tending to support this finding of fact. There is an overwhelming preponderance of testimony that Hutchinson renounced any interest in the property; that he was there simply to care for it for the Thornton estate and that he finally released possession of any interest whatever of or from George E. Thornton, under the direction of the administrator, Hull, to the plaintiff in error here,

and that, having done so, he had nothing to turn over to Oliver C. Thornton, and that the claim which he made in his testimony, long after he had, as the agent af the administrator of the estate of George E. Thornton, turned the property over to Mrs. Jackson, that there were improvements on the property which he acquired from George E. Thornton, and that he had acquired them for a valuable consideration, while he testified also that he simply had an agreement with George E. Thornton, by which he was to take the property of Thornton if he (Thornton) failed to acquire the title to it, abundantly and overwhelmingly show that he was fabricating material to support Oliver C. Thornton's claim.

It is also assigned as error that witnesses were permitted to testify in behalf of the plaintiff, Thornton, over the objection of Mrs. Jackson's counsel, to statements made by Hutchinson and his wife and by G. E. Thornton. A. E. Ellis was permitted to testify in behalf of the plaintiff below, Thornton, that he had heard Hutchinson, while he was living on the property, say that "he was taking care of it for Oliver C. Thornton." C. H. Eagin was permitted to testify touching his conversations with George E. Thornton before his death, while Hutchinson was there, and that he said in that conversation that he had Hutchinson there living upon his property, and that, in case it should be finally determined that he could not hold the lots himself, he intended Hutchinson should have them, and that he had had two or three similar conversations with him. Mrs. Johnson was permitted to testify to conversations with Hutchinson and his wife, in which she said that Hutchinson and his wife said that "they were holding them [the lots]

for Oliver C. Thornton." This testimony was objected to at the time by the counsel for Mrs. Jackson, but it was thus repeatedly admitted; and, bearing as it does directly upon the contention, it must have influenced the judgment of the referee, and we think that its admission was material error, for which the case should be reversed.

It is also argued in behalf of the plaintiff in error that the sixth conclusion of law is incorrect, in view of the sixth finding of fact. It is stated in the sixth finding of fact that Albright, Harvey, and McClung staked the lots in question, but were prevented from occupying or making any improvements thereon by G. E. Thornton, under whom Hutchinson afterward claimed to hold the lots. It is found in the thirty-second and thirty-ninth findings of fact that the plaintiff in error acquired the interests of McClung, Harvey and Thornton by quit claim deeds, for the sums, respectively, of $390, $300, and $75. The sixth conclusion of law is that "neither the defendant Lotta Jackson, nor any one under whom she claims, had ever been in possession of said lots, or any portion thereof, nor had ever up to said time occupied or made any improvements thereon," and "we do not understand that a mere intention to occupy or improve a town lot, and an attempt to do so, which was prevented, would constitute a sufficient occupancy thereof, within the meaning of the town-site laws."

We think this, also, was erroneous. We think that the effort of McClung, Harvey, and Albright to take possession, who were prevented by Thornton by force from occupying and making any improvements thereupon, was equivalent to the erection of such improvements, as against Thornton,

or any one attempting to set up a claim by, through, or under him; and this conclusion is covered by *Downman v. Saunders,* 3 Okla. 227, 41 Pac. 104. For these errors the case will be reversed, with direction for further proceedings.

Burwell, J., having been of counsel, not sitting; all of the other Justices concurring.