Erling O. OSWALD, Martha O. Creswick and Marie O. Engberg, Appellants,

v.

COLUMBIA LUMBER COMPANY OF ALASKA, a corporation, Appellee.

No. 753.

Supreme Court of Alaska.

March 27, 1967.

Allan A. Engstrom, of Connor & Engstrom, Juneau, for appellants.

Donald L. Craddick, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This appeal involves a small strip of land located in the area of South Franklin Street in Juneau, Alaska. In December 1964, appellee Columbia Lumber initiated an ejectment action against appellants in the superior court. In its prayer for relief,

appellee requested that it be granted possession of the real property, that appellants be ordered to convey title to the property to it, or alternatively that title be quieted in it. After a nonjury trial the superior court entered judgment in appellee's favor. In its judgment the superior court "declared" that appellants held title to the property in dispute in "constructive trust for the benefit" of appellee. The judgment further ordered appellants to deliver possession to appellee and quieted title in appellee. We affirm the judgment that was entered below.

Until 1961 title to the real property in question remained in the United States of America. In 1904 the general area had been staked and surveyed for purposes of a lode claim which was subsequently rejected. In 1911 the Alaska Goldmining Company filed a millsite claim. The population of the area increased and in 1914 the Bureau of Land Management's Survey 7A, Addition to the Townsite of Juneau, was approved. Conflicting claims between the millsite claim and the townsite held up proceedings in regard to the addition. A new survey, completed in 1920, was approved in 1921. Thereafter nothing happened in regard to townsite status from 1921 until 1961 when a public meeting was held in regard to the proposed subdivision of the area, designated as 7A Amended. The Bureau of Land Management surveyed the area in 1961. This subdivision survey was approved and a patent was issued to the townsite trustee. Since 1961 the townsite trustee has been issuing deeds to various parcels in the subdivision. On January 15, 1963, the townsite trustee, by a native unrestricted trustee deed, conveyed title to the land in question to appellants Erling O. Oswald, Martha O. Creswick, and Marie O. Engberg.

The issues in this appeal center on the effect of the townsite trustee's 1963 deed to appellants and on the effect of the townsite trustee's determination that the real property in question was unoccupied prior to the issuance of the 1963 deed to appellants. The entry, subdivision, and issuance of a townsite trustee's deed to the real property in question was made pursuant to 26 Stat. 1099 (1891), 48 U.S.C. § 355 (1964).[1] In discussing the purpose of townsite laws as they pertained to Alaska, Judge Wickersham said in Sawyer v. Van Hook:[2]

1. This section provides:

Until otherwise ordered by Congress lands in Alaska may be entered for town-site purposes, for the several use and benefit of the occupants of such town sites, by such trustee or trustees as may be named by the Secretary of the Interior for that purpose, such entries to be made under the provisions of section 718 of Title 43 as near as may be; and when such entries shall have been made the Secretary of the Interior shall provide by regulation for the proper execution of the trust in favor of the inhabitants of the town site, including the survey of the land into lots, according to the spirit and intent of said section, whereby the same results would be reached as though the entry had been made by a county judge and the disposal of the lots in such town site and the proceeds of the sale thereof had been prescribed by the legislative authority of a State or Territory: *Provided,* That no more than six hundred and forty acres shall be embraced in one town-site entry.

26 Stat. 1097 (1891) 43 U.S.C. § 718 (1964) provides as follows:

Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated.

2. 1 Alaska 108, 110 (1900).

These statutory provisions show that it was the intention of Congress to dispose of lots in town sites in Alaska only to those who would possess and use them. Title thereto can be obtained only through settlement occupancy.

Appellants agree with Judge Wickersham's analysis of the townsite laws of Alaska.[3] Their primary contention in this appeal is that the townsite trustee's determination that the real property in question was unoccupied prior to his issuance of the 1963 deed was not subject to collateral attack by appellee in the lower court.

We find it necessary to set forth, in some detail, the history of the occupation of the disputed real property.

SKETCH OF APPELLEE COLUMBIA LUMBER'S CLAIMED PROPERTY IN RELATION TO TOWNSITE TRUSTEE'S SUBDIVISION PLAT

Appellee's evidence in support of its claim of title, and right of possession, to the strip in question shows the following: On December 14, 1961, the United States district court in Juneau, in a lien foreclosure suit brought by the United States, ordered certain property (including the property involved in this case) which was owned by the Alaska Plywood Corporation to be sold. Appellee Columbia Lumber purchased the property (the Saxon tract) at a marshal's sale for $2,600. The sale was then confirmed and a marshal's deed issued to appellee on April 22, 1963.

3. In their brief appellants stated in part: It is clear that Mr. Gustafson had no authority to plat a street over occupied property in the townsite area. McCloskey v. Pacific Coast Co., 160 F. 794, 22 L.R.A.,N.S., 673 CCA 9th (1908).

. As to the years prior to the issuance of the marshal's deed, appellee's president, Tom Morgan, testified that he had been president of Alaska Plywood and that in the past appellee Columbia Lumber, Alaska Plywood, and Juneau Lumber had been interconnected corporations doing business in the South Franklin Street area of Juneau. In 1953 additional land was needed for the operations of these corporations and at this time Alaska Plywood paid $2,800 to Alice Saxon Fife for a deed to the Saxon tract. This tract included the contested property.[4]

In regard to the use and occupancy of the Saxon tract by appellee and its predecessors in interest, the evidence discloses the following: After Alaska Plywood acquired the Saxon tract in December 1953, it tore down two existing buildings which were located on the tract.[5] Appellee's president, Tom Morgan, testified that thereafter every foot of the Saxon tract was used principally for the storage of lumber and secondarily as parking space. Morgan also testified that he personally observed the storage of lumber and parking of cars on this disputed tract during the period from 1953 to 1959, and that the period 1959 to 1963 saw essentially the same use being made of the strip in question. After cessation of the Juneau Lumber Company mill's operation in 1963, the Saxon tract was no longer needed for the storage of lumber. The property then was used as parking space for some of the staff cars and occasionally a few carrier loads of lumber were stored there. Morgan

also testified that throughout this entire period (1953–1963) appellee Columbia Lumber and Juneau Lumber jointly used this property, pursuant to an agreement with Alaska Plywood.[6]

The evidence as to appellants' claim of title, possession, and use of the disputed area reveals the following: George E. M. Gustafson, the townsite trustee, stated he first visited the subject property in June of 1960 and that thereafter he visited the area at least once every three months. Gustafson testified that during these visits he did not see any evidence of improvements or that anyone was using or possessing the land. The property in question was characterized by Gustafson as "a piece of open land."

Gustafson also related that during his inspections of the area he did not see any evidence of appellants' use of the strip in question.[7] Similarly, Tom Morgan testified that he never saw any of the appellants using the strip after the two buildings on the Saxon tract had been demolished in late 1953.[8] During the testimony of appellant Marie Engberg, it was stipulated by counsel that at no time prior to October 1963 did any of the appellants personally advise anyone representing appellee Columbia Lumber that they had any interest in the disputed property. Appellant Marie Engberg testified that no use was made of any portion of the Saxon tract by appellants or any of their tenants.

Also pertinent is the testimony of the townsite trustee concerning the procedures which he followed before the actual sub-

4. See sketch p. 6 supra. The record discloses that on December 16, 1944, Alice Saxon Fife paid $5,000 for a conveyance of the tract in question from Ehrman and Margaret Bliss.

5. The demolition was completed in late 1953 or early 1954.

6. The witness Morgan's testimony as to the use which was made of the Saxon tract after it was acquired by Alaska Plywood was corroborated by William D. Graves who was appellee's retail yard manager from 1951 to 1965.

7. The townsite trustee related that he had spoken with only one of appellants prior to issuing his deed to them. He also stated that Mrs. Engberg never mentioned to him the subject of use of the land in question.

8. Morgan further testified that at no time did appellants ever approach him or advise him that too much of the Saxon tract was being used by appellee or appellee's predecessor in interest Alaska Plywood.

division was accomplished. Gustafson testified that:

> Before we started doing any subdividing we very carefully researched the [district judge's] * * * records and we [went] * * * to the City Hall and research[ed] all tax records, wherever we [could] * * * obtain evidence. Public meetings such as was held in January when the people petitioned for the survey, we asked them to come forth and give us their right to their chain of title or claim to these properties. A very diligent search was made of all records that [were] * * * available before we start[ed] making any subdivisional survey of it.

The townsite trustee then testified that after making a diligent search of the district judge's records and those of the city tax office "the determination was that the land was apparently open land subject to platting for a street." [9] After admitting that he did not find any evidence that appellants were using the strip in question, the townsite trustee stated that he deeded appellants the now disputed strip because:

> Well, one of my functions as a Townsite planner is to make a decent layout, a proper plan so a street can be taken care of as well as accommodate the claimants on the ground and so I thought it would be only fair that Columbia Lumber has a 5 foot area on their side since the other property would have 5 feet on their side * * *.

On essentially the evidence as outlined above, the trial judge found that:

> Said property was thus granted to [appellants] * * * on the mistaken assumption by Mr. Gustafson that [appellants] * * * had previously owned and possessed the property.

* * * * * *

Said Trustee Deed was further issued because [appellants] * * * had filed an application for the subject property with the United States Department of the Interior, Bureau of Land Management under which they certified that there was no one living on or claiming an interest in said property other than themselves, which certification they knew to be factually and legally incorrect.

[Appellants] * * * did not own, use or possess the subject property prior to the issuance to them of the aforesaid trustee deed.

[Appellee Columbia Lumber] * * * has at all times * * * claimed paramount right to title, and title to the property, and has used and possessed the subject property up to the time [appellants] * * * received their * * * Trustee Deed, which usage consisted of storage of lumber on all or substantial portions of the subject property from time to time, the parking thereon, from time to time, of automobiles driven by the employees of [appellee] * * * Juneau Lumber Company and Alaska Plywood Corporation, all of which was clearly known to [appellants] * * *.

[Appellants] * * * knew of [appellee's] * * * claim of title to the property and of [appellee's] * * * use and possession thereof.

Our review of the entire record in this case has led us to conclude that these findings of fact of the superior court are supported by substantial evidence and are not clearly erroneous.[10] Although we have reached this conclusion, it remains necessary to discuss the arguments advanced by appellants in this appeal.

9. As to precisely how he platted Layton Way over the Saxon tract, townsite trustee Gustafson testified:

> Right on Franklin Street there is a distance of 35 feet between an old building that Mrs. Engberg owned and * * * the porch of the cement building that belongs to Columbia Lumber

and so we tried to give * * * open area on the sides of the buildings so I just split the 35 feet and left 5 feet on each side and made Layton Way 20–25 feet wide. I left 5 feet on each side of Layton Way.

10. Nissen v. Hobbs, Opinion No. 357, 417 P.2d 250, 251 (Alaska 1966).

■ All parties to this appeal are in agreement that under 43 U.S.C. § 718 and 48 U.S.C. § 355 [11] a right to townsite property is based upon use and occupancy. Typical of the authorities supporting this position is Biddick v. Kobler,[12] which involved a quiet title action in regard to a townsite deed, from a county court judge, issued pursuant to what is now 43 U.S.C. § 718. In that case the court said in part:

> Respondent brought this action relying upon his paper title, viz. his deed from the judge; and appellant may rely upon his actual possession as a defense to the action, if he can show that at the time of the execution of said deed he was the occupant and entitled to the occupancy of the land in contest, and respondent never was either the occupant or entitled to the occupancy of said land. If the respondent was not the occupant, within the meaning of the grant of congress, he was not entitled to the deed from the judge; and, as we have seen, there is no statutory provision making the deed conclusive as against appellant. These views are sustained by the following authorities * * * Treadway v. Wilder, 8 Nev. 91, 9 Nev. 71; Lechler v. Chapin, 12 Nev. 65; Rathbone v. Sterling, 25 Kan. 444; City of Helena v. Albertose, 8 Mont. 499, 20 P. 817; Hall v. Ashby, 2 Mont. 489.[13]

■ If the *Biddick* line of authorities were to be followed, it is clear that the superior court correctly ruled in favor of appellee in this action. The record is undisputed that at no time did appellants use or occupy the strip in question. On the other hand, there is substantial evidence in the record showing that appellee's use and occupancy of the strip in question, and that of its predecessor in interest, Alaska Plywood, was notorious, exclusive, and continuous.[14] Any conflict in the evidence between the townsite trustee's testimony and appellee's evidence pertaining to use and occupancy of the property was in the trial court's province to resolve as the trier of fact.

Despite the foregoing, appellants argue that as to a townsite deed issued by an agent of the Department of Interior under 48 U.S.C. § 355, appellee is precluded from collaterally attacking the townsite trustee's factual determination that the land in question was unoccupied. In support of their position, appellants cite Carr v. Fife[15] and Miller v. Margerie.[16]

*Carr* involved a suit to set aside a patent which had been issued by the United States under the homestead laws. In that case the Supreme Court of the United States said:

> Of course, in the absence of fraud and imposition, the findings and decision of

---

11. Note 1 supra.

12. 110 Cal. 191, 42 P. 578, 579–580 (1895). See Hinchman v. Ripinsky, 202 F. 625, 635–636 (9th Cir. 1913), cert. denied 234 U.S. 759, 34 S.Ct. 676, 58 L.Ed. 1580 (1914); Gordon v. Ross-Higgins Co., 162 F. 637 (9th Cir. 1908); Osgood v. Donnelly, 1 Alaska 385, 390 (D.Alaska 1901); Sawyer v. Van Hook, 1 Alaska 108, 110 (D.Alaska 1900).

13. Accord, Walter Realty Co. v. Jones, 35 Okl. 272, 129 P. 840, 841 (1913), which involved an action to recover possession and quiet title. In this case the court said:
 It is well settled that when a town site is entered by the probate judge under sections 2387 and 2388, Revised Statutes of the United States * * * he takes the title in trust for the bene-

fit of the occupants; and when a lot is continuously in the actual possession and occupancy of one party, who is shown to be a prior settler thereon, he is not deprived of his right thereto by an award of the town-site commissioners and a subsequent deed from the probate judge to another party.
 See Roberts v. Ward, 3 Cal.App. 101, 84 P. 430, 431 (1906).

14. Price v. Brockway, 1 Alaska 233 (D. Alaska 1901); Jackson v. Thornton, 8 Okl. 331, 58 P. 951 (1899); See United States v. 10.95 Acres of Land in Juneau, 75 F.Supp. 841, 843–844, 11 Alaska 518, 524–525 (D.Alaska 1948); Isler v. Jensen, 382 P.2d 901, 902 (Alaska 1963).

15. 156 U.S. 494, 15 S.Ct. 427, 39 L.Ed. 508 (1895).

16. 149 F. 694 (9th Cir. 1907).

the land office cannot be reviewed as to the facts involved, and the court below would not have been warranted in interfering with the title of the patentee and his vendees.[17]

In the *Miller* case it was stated that:

Under the law and the regulations of the Secretary of the Interior above set forth, persons claiming the right to obtain from the United States the legal title to lots in the town of Juneau were required to make application therefor to the trustee of the town site, and he was clothed with the authority to investigate and determine the rights of all persons making such applications, and his action thereon has the same legal effect as that of the register and receiver in passing upon a claim of right to enter public land under the homestead or pre-emption laws; that is, in the absence of fraud, accident, or mistake, his decision of all questions of fact arising in such a proceeding was final, except as the same might be reversed upon appeal to the Commissioner of the General Land Office and the Secretary of the Interior.[18]

■ We hold, under the circumstances appearing in the record in this case, that the townsite trustee's determination that the real property was unoccupied was reviewable by the superior court under the rule enunciated in *Carr* and *Miller*. We believe that appellee's showing of fraud and imposition was sufficient to bring its case within the ambit of the exceptions stated in *Carr* and *Miller*. It is uncontroverted that

in appellants' application for a trustee deed to the subject property appellant Marie O. Engberg certified that she had used the property since 1923, and that "there is no one living on or claiming an interest in this tract" other than herself. The evidence demonstrates that as to the land in question appellants' application was false. The evidence further discloses that appellant Marie O. Engberg knew at the time she executed the application that these statements were not accurate. In such circumstances we are of the opinion that it would be inequitable to now bar appellee from attacking the trustee's deed as it pertains to the property in dispute, particularly where there is no evidence of appellants' use and occupancy.

One other contention of appellants warrants consideration. Appellants contend that appellee acquiesced in the determination of the townsite trustee to issue a deed to appellants and thereby waived any interest in the property. The basis of this argument is appellants' assertion that appellee "had an extended period of time to inform the townsite trustee of the claim of Alaska Plywood Corporation or of its own claim to the Fife property" but instead it "acquiesced in the platting of Layton Way across the [Saxton tract] * * *."[19] Appellee's position is that it did not "consciously let the subject property go by the wayside" and that it "is guilty, at most, of an honest mistake as to the extent and coverage of the boundary lines laid out in Lot 3, Block 3, U.S. Survey 7–A Amended."[20]

17. 156 U.S. at 501, 15 S.Ct. at 430, 39 L.Ed. at 511. See King v. McAndrews, 111 F. 860, 863–864, (8th Cir. 1901); New Dunderberg Min. Co. v. Old, 79 F. 598, 603 (8th Cir. 1897); Board of Education of City of Deadwood v. Mansfield, 17 S.D. 72, 95 N.W. 286, 289 (1903). Cf. Barden v. Northern Pac. R. R., 154 U.S. 288, 329, 14 S.Ct. 1030, 38 L.Ed. 992, 1002 (1894).

18. 149 F. at 697. We note that at the trial of this cause appellants did not argue, or refer the trial court to, any applicable regulations of the Secretary of Interior which required appellee to

first pursue its remedies within the Department of Interior. At oral argument it was conceded by counsel for appellants that this point was not argued either to the trial court or to this court.

19. From this appellants argue that "this in itself is a recognition of the validity of the Townsite Trustee's determination that the property was unoccupied and a waiver of interest in the property."

20. Lot 3, Block 3, U.S. Survey 7–A Amended was the block deeded to appellants by the townsite trustee. This lot encompasses the disputed area.

As to this issue, appellee's president Tom Morgan admitted that appellee's employee, Mrs. Fuller, attended the public meeting in September 1961 which was called by the townsite trustee in regard to the proposed subdivision of the general area. Morgan further testified that appellee first became aware that the trustee's subdivision plat was taking away appellee's land in the spring of 1962 at which time the trustee's actions were protested. According to Morgan, the trustee informed appellee that it would be impossible to make any correction as he had already issued a deed. Appellee then went to the city of Juneau in an effort to obtain the vacation of Layton Way. In preparing for the contemplated vacation proceedings, appellee discovered for the first time that there was property on the northwesterly side of Layton Way to which appellee claimed title.[21] Appellee's president also testified that appellee would have made application for title to the strip in question if they had been aware that the trustee's deed to appellants had included the now questioned strip.

 Our analysis of the record has convinced us that the facts do not support appellants' contention that appellee acquiesced in the trustee's decision to award the property to appellants. The record does disclose that appellee asserted its rights to the property in question as soon as it was aware that the trustee's deed to Lot 3 included a portion of the land it had previously purchased at the foreclosure sale of Alaska Plywood's property. We find nothing in the record to indicate that appellants were misled by, or prejudicially relied upon, any act or failure to act on the appellee's part.[22]

The findings of fact, conclusions of law, and judgment entered by the superior court are deemed amended to conform to the foregoing and as amended are affirmed.

21. This is the precise area which is in dispute in this appeal. See the sketch p. 6 supra.

22. Compare Groseth v. Ness, Opinion No. 370, 421 P.2d 624, 629–630 (Alaska 1966).